at all. Argument not to exceed 15 minutes per side. Mr. DeBaer, you may proceed for the appellant. Good afternoon. May it please the court, this is Adam DeBaer and I'm appearing on behalf of the Michigan State Police Defendants Andrew Knapp, Bryce Willoughby, Ken Shingleton and Tom Doege. I'd like to reserve three minutes for rebuttal. Very well. Simply put, Janice Brown's warrantless arrest here was a rare and unusual circumstance. The overwhelming majority of warrantless arrests involve a police officer who makes an arrest after having observed a criminal offense in real time. Subsequently, the police officers making the arrest will prepare a report detailing what he or she observed and submit that report to the prosecuting attorney with a request that charges be issued. That is not what happened here. In fact, the prosecuting attorney here, Karen Hanson, agreed that the underlying arrest was in a class of its own. And that's because she, Hanson, is the one who observed the criminal offense. One that she characterized as the most egregious instance of witness intimidation that she had seen in her 20 years as a prosecutor. Would she have had responsibility to move this process along after the officers take Ms. Brown into custody? I mean, was she the prosecutor on the case and then she's the one that, from your point of view, would have moved it forward so that Brown gets a timely appearance in court? It's a complicated question, Your Honor, because most likely Hanson would have been prevented from being the attorney of record in that case. You can't be a witness and a lawyer in the same case. It's a really bad idea. Correct. Not recommended. However, it was the scenario where the prosecuting attorney's office is the one that observed the underlying offense. And in the majority of warrantless arrest cases, the arrest is made and the police prepare the reports, give it to the prosecuting attorney. In the state police defendant's mind, the prosecuting attorney was the one that observed the offense. It was like a prosecutor, but not the prosecuting attorney. Correct. An assistant prosecuting attorney. And when the assistant prosecuting attorney observed the offense, she advised the state police defendants that there was certainly probable cause to arrest Ms. Brown. Correct me if I'm wrong, but your position seems to be that under our Winkoop case, under that case and maybe one or two others, that the officer was entitled to trust the prosecutor's office to get this person in court timely, notwithstanding the Michigan statute, which was present in some of these other cases where our court said the officers were entitled to qualified immunity. The Michigan statute is saying that the officer must accompany the person or get the person to court, right? Correct. You're saying these officers are entitled to rely on the prosecutor? Why is that? Other than a prosecutor happened to witness the conduct? There's a two-part answer to that question, Your Honor. Sorry, it's a compound question. I'm bad at that. I apologize. Same here, Your Honor. Lots of compound questions. But no, with respect to the statute, this court in Roberson v. Winkoop did acknowledge that the Michigan State Police do not maintain a jail or custodial institution where detainees are lodged. Rather, they do rely on the custodial agencies to ensure that the warrantless arrestees are brought for their arraignment. But the reason that they were entitled to rely on the prosecuting attorney's office is also a part of qualified immunity. Indeed, I do not dispute that the Michigan statute says what it says and that this court in Drogosh v. Metcalfe said that that's the statute that we look to. However, here, the arresting officers, there were not four arresting officers. In fact, Ms. Brown in her brief and in her complaint acknowledges that Knapp and Willoughby, the two officers that came to the assistance of Doege in court, are the ones who arrested Mrs. Brown. So under that statute and under Drogosh, those would be the officers who could have a response ability to ensure that Ms. Brown was brought before a magistrate for a probable cause determination. However, on the violations prong, moving away a bit from the clearly established prong, Knapp, Willoughby, and also Doege and Shingleton, if we're assuming that he was present in court that day, all of their actions were objectively reasonable. And that's because Knapp and Willoughby, they didn't witness the underlying offense. They had no involvement with the underlying prosecution of Brown's son. Rather, they were brought to court because Doege was in business attire for the preliminary examination. He didn't have handcuffs and was unable to arrest Ms. Brown. Knapp testified that he understood his responsibility as transporting Brown to jail, essentially from the court. Doesn't that just go to the initial seizure and not to the inordinate delay, though, in terms of objectively reasonable? I think, so both, there's two, essentially two Fourth Amendment claims at issue here, right? There's the false arrest claim, which the defendants maintained there was probable cause, so qualified immunity should apply there. But with respect to the so-called Riverside claim, it's still an objective, reasonable standard at all points during the period and time in which Ms. Brown was held before having a probable cause determination made. And Knapp and Willoughby, it was objectively reasonable for them to assume that Hanson, the prosecuting attorney, or Doege, their fellow detective who was on the case, would have followed up with the necessary paperwork to ensure that it... I'm struggling with getting to that point because I don't see in the case law how you would reach it. You cite Rayfield for us and Roberson, and yet you also recognize in both of those, you're in, your case is in a different circumstance because in Rayfield there was no question that it was a jointly managed detention. And that was the key to that case. You don't have a jointly managed detention in this case. You have these two categories of individuals that the decision below clearly related to the same kind of liability category. I'm thinking of pages 10 and 11 of the decision below that actually summarized why all four of these people fall in the same category, explaining what happened with Doege being there and with Willoughby coming to assist and with Singleton, all three honoring the supplemental police reports and receiving them over time. I think the court below tells us that they are all in the same category. Why is that incorrect? I don't believe that the district court below did make a determination as to who the arresting officer was, which is the standard that this court has set forth in Drogosch v. Metcalf. The district court did sort of lump all the four defendants together, but I think when the record is reviewed it's clear that they're in different categories because the original officer who was advised by Hanson, the prosecuting attorney, was Doege, who again didn't witness the underlying offense and acting upon the advice of the prosecuting attorney, who generally speaking law enforcement officers do rely upon. He said, I heard a call, I received information from Hanson that this instance of witness intimidation happened. She said there's probable cause for arrest. Can you please? Probably, I don't mean to interrupt, but probably part of our issue is that we've got those two different categories going on. And perhaps there is a distinction in the way we look at the individuals. If we're looking at the first argument about whether there was probable cause or not, you have one clear statement by an assistant prosecutor. I think there's no question there. But if you turn to the failure to give a hearing, the failure to provide within 48 hours what the Supreme Court has said in Riverside is the core requirement of that type of retention. I think, and I'm fine with you correcting me, that the explanation by the district court below was focusing on that ultimate failure to provide the hearing itself when it explained the role that each of them had throughout that placed them in the same circumstance. So I'm not seeing, I'm seeing clearly established law under Riverside and then Charrington and drug rush that simply says if you bring somebody in without a probable cause hearing and you place them in custody, you've got 48 hours to do something about it, period. And you don't fit within the Rayfield exception, because you don't, it was not joint custody. So the question is whether Charrington has made clear that when you're talking about a violation and when you're talking about whether there is support in the case law, that's the end of qualified immunity. We don't have to go down the rabbit trail of who particularly was liable in that circumstance. We would just have to say, Riverside, Charrington, drug rush, tell us this is the rule and the involved defendants don't get to do this. Somebody else was supposed to take care of that. I really didn't, because they're not in joint custody shared arrangements. They're not in one of the, what do they call it, unusual and extraordinary circumstances that make an exception to what the Supreme Court has told us to do. So, Your Honor, I would respectively point out that we are within the Rayfield exception. The Rayfield case had the city of Grand Rapids arrest and provide custody or transfer custody to the county of Kent. In this case, it was the state police defendants, specifically Knapp and Willoughby, who took Ms. Brown into custody and transferred it to the Genesee County defendants. So it's exactly the same. Because the state troopers have no place to put them. And the premise of Rayfield is that it was a shared custody agreement in which the two entities had to communicate about their shared custody. There's no shared custody here. The Memphis State troopers never keep people in a facility because they don't have one. I may just respond briefly, Judge Strantz. There was shared custody in this particular case, but the Michigan State Police troopers who took Brown into custody were Knapp and Willoughby. They did have custody over Brown from the point in time that handcuffs were in place until she was lodged in the local jail that was maintained by the county. That is the same exact situation that happened in city of Rayfield versus the city of Grand Rapids. Was that Wynkoop as well? Wynkoop is more similar to this case. But Wynkoop, you had the more traditional warrantless arrest where the police officer is the one observing and preparing a report. I do submit, Judge Strantz, that this is exactly the same scenario as Rayfield versus the city of Grand Rapids. And that under the Drogosh, Charrington, and Riverside, none of those cases speak to the unusual and rare circumstance at issue here. I apologize for going over my time. One more question. Why is this an unusual and rare circumstance if the Memphis State troopers never have a jail of their own? It would present itself in every case that they take someone into custody. I don't understand how you can argue that that's an unusual exception when that is the way they do business. How this particular arrest transpired is the unusual circumstances behind it. In the Roberson versus Wynkoop case, also a Michigan State police trooper case, you had the police officer make the arrest, write up a report, and send that report to the prosecuting attorney. Here where the statute and the case law requires the arresting officer to be the one that follows up to ensure that a probable cause determination is made, you only had two of the four officers – well, if we're assuming Shingleton was present – four officers that were present on the scene of the arrest actually take Brown into custody for a time. Only two officers fit the description of the persons who have the duty under the Michigan statute. Correct. But based off of this Court's opinion in Drogosh, only two do. And it's the department's or the defendant's submission that those two defendants, their conduct was objectively reasonable by relying on the other officers. And what about Shingleton, who received a report every day on the status that showed that there was no hearing held? So I'll note for the record that the page citations I don't have off the top of my hand, but they're in the District Court's opinion. Shingleton did not receive notice every day through those fresh arrest reports. Other state police individuals did, but Shingleton was not a recipient. And that list of the fresh arrest reports is in the record. As soon as Shingleton was informed that Ms. Brown was in jail over her 98 hours, he instructed her to be released. Or he instructed the jail to release Ms. Brown. And I'll sit down and answer questions. All right. Thank you. You'll have your rebuttal. We'll hear from Mr. Porter. Good afternoon, Your Honor. Mayor of the Police Department, my name is Austin Porter, Jr. I'm here on behalf of Janice Brown. I bring you greetings from Little Rock, Arkansas. This case, Your Honor, the facts are really not in dispute. I mean, Ms. Brown was held beyond 96 hours. She should have gotten probable cause hearing within 48 hours. These officers were not going to bring Ms. Brown in front of a magistrate judge on the flimsy case that they had. Can I address sort of the shared custody discussion that we've sort of been having for a while, where I guess there's an argument that Michigan State Police shared custody with a jail, and therefore that's where this confusion arose. Is this a shared custody situation? No, Your Honor, it's not. It's not a shared custody. And as Mr. DeBaere recognizes, the State of Michigan does not have a jail to put someone in, so this is not like the situation that you had in Rayfield. This is not, in Rayfield I think there was a miscommunication between the two districts, the two jails, the two counties, about how the transportation was going to take place. This is not a shared custody situation. This is a situation where the Michigan State Police had this person, Ms. Brown, placed in jail in Flint, in the Flint area. Yes, Your Honor. And when Ms. Brown continually asked when she was going to be brought in front of a magistrate judge, of course the jailers kept telling her, well it's up to the troopers to make that determination. These fresh reports were being submitted to these troopers on a daily basis, based on the jail administrators, Jason Gould testified, that these fresh reports were generated on a daily basis. They had Ms. Brown's name on it, the time she was arrested, how long she had been in custody, and the arresting agency that was responsible for her. And the officers who were involved, these four officers, first of all you have to look at Sergeant Bryce Willoughby, I think he was, the testimony was he was a supervising officer on duty. Then you had Mr. Knapp, who was also an arresting officer there. The two of them testified that they were told to arrest Ms. Brown by Mr. Doji. On that point, I mean they are the arresting officers, correct? I submit, Your Honor, that all four are the arresting officers. And when you look at... Well, I mean the statute says a peace officer who has arrested a person for an offense. Yes. Then has this duty. Yes. You know, I mean, so the officers who themselves effect the seizure seems to be pretty straightforwardly what that's saying. Not somebody who asked for help, not somebody who's saying you ought to do this. But the two officers who go and forcibly take the person, seize the person, they have the duty here. That is correct, Your Honor. But also, in the Charrington case, the Charrington said that you don't look necessarily to the individuals who were involved. You look at the totality of the circumstances. Who else was involved? And so it's just not limited to the arresting officer. It could be other persons who were responsible for the delay, and there were other people who were responsible for the delay, such as all four officers. I'm having a hard time seeing why anyone other than Knapp and Willoughby should be in this case. And I will also, on the same point, say the district court lumped everybody together, unless I'm missing something. And that's just QI, you know, a basic rule of qualified immunity, is defendants must be treated individually. I'll kind of scratch my head why anybody other than Knapp and Willoughby are still in this case. Your Honor, I don't see why it's a head-scratcher when Doji, Doji was the one who told these two officers to arrest this person. Yeah, but he didn't arrest him. And the statute says if you arrest somebody, you have this duty. It's the ones who put the cuffs on the individual who have the duty to get that individual to court. Your Honor, they're joined at the hip, as far as I'm concerned. Doji instructed these officers. It's kind of like if one police officer tells another to pepper spray or to tase someone, and they do it, you know, first of all, the officer should be questioning constitutional rights from being violated. And so you've got someone like Doji who was telling these officers to arrest this person. Well, is he telling them that because he's dressed up for court and he doesn't have his handcuffs? Well, Your Honor... My understanding was that was what the record said. Yeah, the record... Correct me if I'm wrong. He's standing there in the court, ready for his appearance, without handcuffs. So he turns around to the guy beside him and says, you got your handcuffs? Arrest that woman. That's correct. Right? That's correct. That's what the record said. And I think the problem for me is that we really...it's a little difficult when we have to parse out that issue. Because if there is a failure to observe Riverside and Charrington and the 48-hour rule, then we don't have to go down the liability rabbit track. Because those who are engaged in the arrest...and that may be the technical issue. How does one handle who is engaged in this particular circumstance? But that's the district court's job. The only thing that is before us is was there a violation and was it clearly established? Yes. Correct? That's correct, Your Honor. And there was a Fourth Amendment violation. She was held beyond the 48-hour time period. And the right was clearly established at the time. These officers have been put on notice ever since County or Riverside was...McLaughlin was decided. I think that was decided in 1971. I'm sorry, Gernstein was decided, I believe, in 1971. And then County or Riverside was decided, I believe, in 2009. And so these officers have been put on notice ever since that time. When you arrest someone, they have to be brought in front of a magistrate judge within 48 hours. Your failure to do so is a Fourth Amendment constitutional violation. And I apologize to the court. I did find another case, a case called Lopez v. The City of Chicago. Now, is this one that was in your brief? Because if not, Mr. DeBere has not had a chance to respond or be on notice. Yes, Your Honor. I emailed a copy of it. I told Mr. DeBere about it this morning. Okay, go ahead. I told him about it, and I apologize to the court. That's okay. But it's really... We'll make sure he's able to respond before we get into it. Yes, Your Honor. But in the Lopez case, Mr. Lopez was pointed out as an individual who shot and killed a 12-year-old child in a drive-by shooting. It's a Seventh Circuit decision. He was handcuffed to the wall for a period of four days in an interrogation room, not brought in front of a magistrate judge. And in that case, the court held that that was a Riverside violation, that was a constitutional violation. And really, the case went to trial, and the Seventh Circuit was critical of the district court judge, saying that the district court judge should have granted the plaintiff motion for summary judgment. We filed a motion for a summary judgment in this case as well. And so the district court, the Seventh Circuit said that the district court should have granted the motion for summary judgment, and the only issue that needs to be determined are what are the compensatory damages that are involved. And so the defendants in this case, they're saying, well, we didn't intentionally do it. That was kind of the argument that was made by the officer, I believe in Metcalf. He was saying it wasn't my fault. He was saying that he didn't do it. But he was the arresting officer. He had a duty to bring the arrestee in front of a magistrate judge, and he did not do it. And that was a constitutional violation. So yes, when we're dealing with qualified immunity, was there a constitutional right violated? It was. Was the right clearly established at the time? It was. And so that's the only issue that we need to be dealing with. And so really the Michigan troopers are basically saying, well, Judge Coomore got the facts wrong. The court really didn't have jurisdiction to deal with that. They're upset about what factual findings that the court basically made, saying that there were still genuine issue of material facts for a jury to decide. And so we just believe, based on that, this court really didn't have jurisdiction to entertain this appeal. I'd like to ask you about the false arrest, whether there was probable cause. I mean, it seems that the district court did not address the defendants' arguments that they were entitled to summary judgment, either on the merits or on qualified immunity, with respect to this claim, the claim that she should not have been arrested in the first place. And it seems to me that there was ample probable cause to arrest Ms. Brown, that the prosecutor saw what she saw, and Ms. Brown, according to the prosecutor, was yelling at this witness, and that this witness had done, I think Doogie had seen the witness, I think the day before or a few days before, and then the witness does an abrupt about-face with regard to her willingness to testify after apparently being pursued by Ms. Brown. So, I mean, probable cause, reasonable cause to think that a crime has been committed, I mean, why didn't Doogie have that easily? Judge Kettler, I mean, that's an interesting point that you bring up. When you look at the supplemental report that Shingleton prepared, I think he prepared the report on September the 19th of 2018. When you look at his supplemental report, there is nothing in there that talks about what Hanson claimed that she said that she saw. Nothing. The only thing that's in the report, in his supplemental report, is he indicates that he saw someone, saw Ms. Brown, following closely behind Ms. Sheneane Jones. That's it. Screaming at her. He didn't mention screaming at her, Your Honor. He just simply said that Ms. Brown was following closely behind. Which defendants do you think are subject to liability for the false arrest claim? For the false arrest claim, Your Honor? Which ones are? Definitely Shingleton, and definitely Doogie are responsible for the false arrest claim, and of course, you know, definitely those two because when you look at... I don't mean to interrupt you. You think that an officer is entitled to rely upon the firsthand, you know, kind of recent witness of a prosecutor about particular events for purposes of making a determination whether to arrest somebody? Your Honor, as I recall, I took Doogie's deposition, and according to Doogie, he doesn't recall anything about Hanson telling him about that. And so, and then again, when you look at the supplemental report that Shingleton prepared, there's nothing in there about Hanson saying what she claimed that she saw. And all of a sudden, she came up with this story some several years later after this incident. Now, if this had truly happened, now just think about it. You go into a courtroom. You pass them by security. These deputies, Genesee County deputies are right there at security. Ms. Hanson claimed some three or four years later that my client is screaming and yelling and just all crazy. Those deputies would have intervened and would have come to her aid. That did not happen. Also, you know, there's part of the statute that says if anyone impedes someone's ability to come to court and testify, then that's satisfied the statute. But it's interesting that on September 14th, when Ms. Brown was arrested, these two officers, Doogie and Shingleton, went to Ms. Jones' house to try to get Ms. Jones to say, hey, did Ms. Brown intimidate you in any kind of way? And she told them she didn't want to talk to them, she didn't want to say anything else about the case, and she was done with it. And so why did they need her? They needed her because there was nothing that Hanson had told them that this had happened. This is something that I think she has totally made up. And because she, it never got into the report. If that had truly happened, Shingleton would have put it in his report that according to Hanson, this lady was just acting belligerent and crazy and making all kinds of threats, and that did not appear in that report. I thought Doogie did testify that Hanson said this to him. And I'll stand corrected if I'm wrong. I recall in Doogie's testimony... I mean, if he did testify to that effect, wouldn't then he have grounds? You know, if he testified that the prosecutor said, I just saw this, you can't arrest this person. I just saw, you know, these circumstances that obviously amount to impeding the witness's ability to testify. I mean, can an officer rely on that? Well, Your Honor, but again, it's interesting, it did not appear in Shingleton's supplemental report. Okay, but I'm asking you just a generic hypothetical question. If a prosecutor tells a police officer that somebody has in, you know, this manner just now impeded the ability of a witness to get in the courtroom to testify, can't the officer rely upon that? I would have to concede that point, Your Honor. Okay, I appreciate that. Yeah, I would have to concede that. Sometimes they're hard to come by, you know. Yeah, okay. But your position is that the September 14, 2018, Shingleton report contained not a word. Not a word. Not a word about it. And also, on September the 14th, when Ms. Janine Jones finally appeared in court, she gave the same story that she's always given. She didn't know who did the shooting. There was a fight between Ms. Jones and Ms. Bates, and Ms. Bates went into the room, got a gun, and when she saw the gun, Ms. Jones ran out of the house. That has been her testimony consistently. And so that wasn't enough to get the case bound over the circuit court, because that wasn't enough to establish probable cause. Now, here's another thing. If Ms. You're going to have to wrap it up, sir. Okay, I'm sorry, Your Honor. I get rid of it. No, you take 30 seconds. If Ms. Brown had done what Ms. Hanson said that she had done, I think Ms. Hanson would have been telling the judge, hey, this lady is changing her story because she has been threatened. That wasn't even reported to the judge in the criminal case. All right. Thank you. Thank you for your argument. We'll hear rebuttal. I'll give you 30 seconds on the back end of that for your wrap up. Thank you, Your Honor. I think if we're here discussing the extent to which a particular officer had the obligation to ensure that Ms. Brown had her probable cause determination, and if we're debating who arrested her and which of those four had that underlying responsibility, well then the law isn't clearly established. It just isn't as to this particular set of circumstance that the defendants were facing. Well, it would seem, I mean, you know, Knapp and Willoughby do the arrest, right? So you would agree that, at least by the terms of the statute, they have this due, right? Correct. They were both in her case. You would say that they've adequately discharged it when they rely upon the prosecutor, you know, relying upon the prosecutor to get the person to court. But, I mean, there's no dispute that at least those two are potentially liable for the delay thing, right? Correct. At least under the violations bond, although defendants admit that their conduct was objectively reasonable and therefore not violative of the Fourth Amendment rights. So you're saying those two relied on the prosecutor. Did they talk to the prosecutor about what took place? How were they able to rely on the prosecutor? I believe, Your Honor, they relied upon the request of their fellow detective. And their interrogatory testimony is contained in the record, and I believe they do both rely, or at least Knapp did, on Hanson's testimony. But that's in the record, and that'll correct me if I'm misremembering. I think the problem for me is kind of back to the same issue, that in qualified immunity we are looking at what the district court decided. The district court lumped all four of these together based on facts. And my concern is that it is in the district court's prerogative to resolve that issue on remand. That is not the issue before us. The issue before us is whether there is a violation and whether there is clearly established law. So all of the permutations and combinations of trying to resolve that, I don't understand how they play into the question of whether Riverside, Charrington, and Dogrush clearly established this law. And just exactly like Charrington said, you'll go back down and the individual's liabilities, it's not a foregone conclusion. That's what Charrington tells us, right? Correct. Your Honor, I think with respect to the clearly established prong, it's not whether the specific right was clearly established. All of the four defendants knew that Ms. Brown did have a right to a 48-hour probable cause determination. It's whether the law with respect to the defendant's conduct was clearly established. I mean, whether what they were doing clearly was... Correct. And it's in our reply brief, but I'd point this court to the eastern districts of Michigan's opinion in Witski v. Reich, which distinguished Drogosh by saying the following, Drogosh involved a single arrest by an officer who personally lodged the plaintiff in jail and personally completed the paperwork that caused the arrestee to be classified in a way that resulted in the County of Riverside violation. That is not what happened with respect to either of the four defendants. And in cases in which the district court doesn't make a proper factual determination as it's required to do, there's Supreme Court precedent that says sometimes the Court of Appeals has to engage in a cumbersome review of the record to determine what facts the district court would have determined had it done so. So I don't know that a remand is particularly necessary in this case. This is already interlocutory. But you already used your 30 seconds, all right? But I have one quick question for you. I mean, am I correct in believing that the district court, as I read the opinion, did not address your argument that I guess it would be Doogie and Singleton or Shingleton were entitled either to QI or just straight up SJ on the merits? I don't believe that the district court did, Your Honor. I believe it focused on the Riverside claim. And thank you again for the opportunity to present an argument. We'd ask that this court reverse. Okay. Well, we thank you both for your arguments. Case will be submitted. Be carefully considered.